Good morning, Your Honors. Dennis Reardon for Appellant Barry Bonds. Your Honors, at trial, this case was about whether Barry Bonds lied on December 4, 2003, to a grand jury investigating trafficking in PEDs, performance-enhancing drugs, by the Valco lab. But this appeal is about something very different, because Mr. Bonds was charged with, ultimately, what he was charged with. He was charged with four false declaration counts, and he was not convicted of any of them. So this is not about perjury. This is about the obstruction of justice statute, Section 1503. And Mr. Bonds was convicted on the basis of a single statement. That statement consists of 52 words. Even if you read it slowly, it takes less than 20 seconds to read. It's primarily about Mr. Bonds' relationship with his father, Bobby, who was also a baseball superstar. It came as part of an answer to a question about whether Mr. Bonds had been given anything to self-inject. The self-injection question was then repeated three times within the next minute or two. Were any of the answers evasive, in your opinion? Absolutely not, Your Honor. And the government agreed. So he's asked whether he was injected by Greg, and he launches into a discussion of how he was a poster child or a public figure or whatever, and never really answers the question. No, Your Honor. There's a critical distinction. You just said he's asked whether he was ever injected by Greg. The question here is, were you ever given anything by Greg Anderson to inject yourself with? And this is critical. Why couldn't he answer that with a yes or no? He did. He did three times, Your Honor. It's on page 43, on page 45, on page --- and this is the critical thing. On page 48 and 49, AUSA Nedrow says, you've satisfied me. We've covered this, but I'm going to ask you one more time. Were you given anything to inject yourself with? And there's a direct no. It's no, no, no. And, Your Honor, not one of those answers is contained in any indictment in this case, not one of them. In fact, and this is critical, Your Honor, and I want to emphasize this, those 52 words are not only deleted from all of them, absent from all four indictments and I'm holding them here in front of you. Here's a critical thing. The paragraph before the 52 words about his dad is included in every indictment. It's included in count two, a false declaration count, in the final indictment. And after that paragraph, you'll see a line of asterisks. So in every indictment, the government and the grand jury put those indictments in, asterisks in, to indicate he was not being charged with those 52 words, nor was he being charged on page 43 with his answer that he never got self-injection materials. And those asterisks are then incorporated into the obstruction of justice count. So there's one thing we know for sure. This grand jury did not consider that those 52 words were criminal activity because it deliberately deleted them with the asterisks from the indictment that's now in front of you. And what the government is attempting to do is, and it's critical for two reasons. It says that this indictment gives him notice that he will have to face that celebrity dad passage as criminal activity when it quite distinctly did not give notice of that. But more importantly, the grand jury, we have to be satisfied that the grand jury said, you know those 52 words? They were criminal conduct. And we know that they didn't do that because they deliberately deleted it from every one of the four indictments, including the last one. So the government can't possibly argue that the fifth, the guarantee, the Fifth Amendment guarantee to indictment by grand jury, or it could be the sixth, was satisfied. It is the fifth. Thank you, Your Honor. Was satisfied in either of its two important prongs. The indictment does not provide notice of the celebrity dad passage, and we know that the grand jurors did not rely on the celebrity dad passage to indict on any of the counts, including the obstruction count. And that is a dagger in the heart of this conviction. We all know that in the Federal system, only, you can only be convicted by the pedigree of a crime of which the grand jury has given you notice, conduct of which it has given you notice, and on which the grand jury found probable cause to believe that a crime was committed. We know the grand jury did not find probable cause to believe that the celebrity dad passage was criminal. And again, I want to emphasize the distinction between injection counts and self – injection accusations and self-injection accusations. It is quite true that the indictment again and again alleged that Mr. Bond said falsely, testified falsely that he had not been injected. Those are the – those are the counts that the government failed to get a conviction on. What the indictment did not allege was that there was anything false about his responses to the – to the statement, I was not given anything to self-inject with. It didn't charge any of those, and there's not a shred of evidence in this record, not a shred of evidence that Mr. Bonds was ever given anything to inject himself with or that he in fact injected himself with anything. So we're – Excuse me. I want to make sure that I understand your position. You're arguing here this morning that the celebrity child paragraph was not in the indictment? Absolutely not, Your Honor. Absolutely not. And I'm holding the last indictment up here. And in that indictment, if you look at the count two – and the government actually pointed this out. The government said that this count two gives Mr. Bonds notice that he's on trial for the celebrity dad passage, when in fact if you look at count two, it ends with you know what I mean, which is the paragraph before the celebrity dad. Then come the asterisks, and they delete the next page and a half. So this is an announcement that you better prepare for this paragraph up here. You better prepare for this paragraph down here. But that entire section of the grand jury transcript, which includes the celebrity dad passage, is omitted from count two. And of course, count two is incorporated in count five. So those asterisks are incorporated in count five as well. And the district court's response to that argument was what? The – oh, this is a – here it is, Your Honor. Yes. The district court bought a myth that the government has perpetrated, which is that count five charges Mr. Bonds with being obstructive in the entirety of his testimony. It most assuredly does not. If you look at count five, it doesn't confound the word entirety, totality. It doesn't confound generally or overall. What it says is that you're charged with four statements, four obstructive statements, counts one to four. Mr. Bonds was not convicted on any of those. And then it says, but not limited to those. Well, but not limited does not mean all. To use a baseball analogy, if you're trying to unload season tickets to me and you say to me, what do you want? I say, I want the Dodgers series, but not limited to those. You can't come back to me and say, you told me you'd buy the entire season's And then I said, I may or may not at a later time make a decision to include something else. And your position is that that's not broad enough, that it's not enough to cover evasive statements of the same nature? It's not enough to cover anything other than the four statements for this reason, Your Honor. This is Russell. What the Supreme Court said in Russell is don't come in here with an indictment that allows you later on to change your strategy or change the basis of conviction so that from what they use as the vicissitudes of the case change, so does your theory of what the crime is. Those but not limited say these are the four statements, and if we're having a rough time with those first four on the eve of instruction, we'll decide that you lied when you said that your greatest achievement in baseball was making the major leagues. Well, I'm sorry. In fraud cases, it seems like normally they deal with a wide sort of term of time and conduct that occurred over time, and I don't think it's that unusual at the trial stage and at the charging stage to narrow the conduct for purposes of the jury and based on the evidence that has come out. And so I'm sorry to say, Your Honor, that that doesn't mean that the person was not informed that during this time period the government alleged that he was conducting the ---- that whoever person was involved in fraudulent conduct. I guess how is this different? I mean, it seems like the indictment sets forth that it's charging Mr. Bonds for conduct that includes testimony or statements that he made that it could have been misleading or evasive. I don't know. How long did he testify for? I would say 120 pages. Okay. So why couldn't that include the time period for which he testified and then be able to narrow it down in light of ---- because that's what the indictment charged. It wasn't like in, you know, not clear in terms of what he was being charged. Well, Your Honor, I beg to differ on this. This indictment does not say you're charged with the entirety of your testimony. If it did, if it did, if you interpret it as saying it did, then the Court committed reversible error when it failed to tell the jury, as we requested, that they had a fine of obstruction in the totality of the testimony. Did Mr. Bonds have counsel present outside the jury room? He did, Your Honor. Did he come in and out? No. No. And, you know, this is a critical thing here. He was asked the question about did you self-inject. He could have gone outside for 15 minutes to talk to his lawyer. During those 15 minutes, he answered that question three times directly. How can that be obstruction of justice? How can that be an evasive answer? We all know that in any trial or grand jury, any witness at one point or another has 52 words of irrelevant responses. Mr. Nowitzki, the government's principal witness, went on in answer to a yes or no question, gave a hundred-word answer that Judge Ilston struck as unresponsive and prejudicial. That's not a crime of obstruction of justice. So your position is that what's known as Statement C was not charged by the grand jury? Oh, absolutely not, Your Honor. Oh, no. Not only was Statement C not charged, but more importantly, Your Honor, there's only 52 words in Statement C that are alleged to be criminal. And those statements are not only alleged, they are specifically deleted. The words before them are contained in a false declaration count incorporated into Count 5. The words after you know what I mean, which is Statement the underlined portion, are where the asterisks are. So they are not there. And, Your Honor, I would submit that the jury was instructive with respect to the statement, correct? Yes, yes. And so your argument with respect to this could not possibly be an attempt to obstruct justice is really something that the jury rejected, isn't it? Well, the jury convicted on Statement C. But what the jury doesn't know, and what we do, is that the United States Supreme Court has stated that if you get an ambiguous answer, it's the prosecution's obligation to repeat the question, which he did, which he got a direct answer for. If you're charging perjury. Under Bronstein. Right. And let's look at the structure. Is that true if you're charging obstruction? Well, Your Honor, I submit this. The United States Supreme Court says that if Mr. Bonds had refused to answer this question, that you should have ordered him to answer it. If he then answers it, as he plainly would have, because he did answer it, it's not contempt. 1623 says if you say something false in the grand jury and correct it before the session is over, then you cannot be charged with perjury. So the entire structure of this is that no one quick mistake constitutes a Federal crime. The jury didn't know that. They weren't instructed on those limitations. But how, how can it possibly be said that that answer, those 52 words, influenced the grand jury in a negative way when they got three answers to the questions and with Mr. Nedrow says, thank you very much, you have answered the question in effect. But just one more time, give me a direct answer. No, I wasn't given any self-injection materials. And Mr. Bonds says, no, I was not direct as could be. How can that be obstructive? The jury does not know the general structure of the law in the area of grand jury testimony. I see I have 31 seconds left. I'll try and reserve them if I can. Thank you, Your Honors. Good morning. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. The jury found that the defendant made Statement C with the corrupt intent of obstructing the grand jury's investigation into Greg Anderson and his distribution of illegal   The jury found that Statement C was material testimony that was false, evasive, or misleading. And the district court, acting as a thirteenth juror in post-trial motions, found no reason to disturb the jury's verdict and denied both the Rule 29 and Rule 33 motions, specifically observing that the evidence supports that the defendant falsely answered the question of whether he had been injected by Greg Anderson. Mr. Reardon says that Statement C was not charged by the indictment. What's your response to that? He's wrong. And the district court, for the third time in its order in denying the motions under Rule 29 and Rule 33, denied that. The indictment very clearly charges the defendant with obstructive activity, giving material testimony that was false, misleading, or evasive on a particular date, December 4, 2003, when he was before the grand jury for approximately two and a half hours, as Mr. Reardon said, 120-some pages of testimony. The indictment additionally specified the subject matter of that testimony. If you look at the beginning of the indictment, which is all incorporated by reference into Count 5, it specifically says that the investigation that the grand jury was conducting was into Greg Anderson, Victor Conti, and their distribution of illegal peds and money laundering, and that it was including but not limited to the statements charged in the perjury counts. In the perjury counts, Your Honor, it has background, but the only parts of the perjury counts are the underlying portions. So really, for example, in Count 2, the only part that's charged as perjury is no, no, the answer that he gave. The rest was background, and in fact, including but not limited was very specifically encompassed that. So there's the theory of the government did change from the beginning and then after the trial. It seems like the district court recognized that as well, that initially the government was pursuing a theory of perhaps as a whole, Mr. Bond's misrepresented or evaded in his responses. What's your response to Mr. Reardon's points about that? Your Honor, I disagree. I don't think the theory changed. There's some confusion between the idea of as a whole and entirety. The government always maintained that his testimony was a single course of conduct littered with multiple examples, such as Statement C, of obstructive testimony. And so the district court from the beginning in 2008, way before the trial in 2011, said, look, the indictment says it's including but not limited to statements. It means it includes all the subsets of statements. So that instead of going out and ---- Why, then, when you included the examples, did you not include these times Mr. Reardon highlights where he states that Mr. Bond's answered three times directly the question that was asked? Pardon? Then why did you not include or in that statement C, the times that Mr. Bond's answered according to Mr. Reardon, that he answered the question that was presented directly three times? He says on page 43, 45, and 48 to 49 of the excerpt. Well, Your Honor, he answered the question falsely each time, and the district court found that. The jury implicitly found that in its verdict. So it ---- How is that? How is that, that he answered it falsely each time? He answered whether he was injected or provided any injectable substances falsely, and the record supports that.    but he was in the position to defend the statement that, as Kathy Hoskins testified specifically, that he saw Greg Anderson injecting the defendant in the abdomen on his way onto the road for baseball season. This is a really important point here, and I'd like to focus on it if you can. Yes. I'm going to ask the statement, see as I understand it, is although he may have been evasive in a string of answers, when it got down to the end, the government lawyer says, okay, just so I'm clear, the answer is no to that. He never gave you anything like that. Answer, right. Was that false? Yes. That's absolutely false. Okay. But if the government gets a direct answer after a series of arguably evasive answers, does that make the preceding answers obstructive? Well, Your Honor, it certainly does if it's a false answer. So the government has a broader theory. The government charged and the jury found that it was either evasive, misleading or false, and we contend that it was all three. The evidence shows that statement C by itself is not this innocuous celebrity child statement. It was a friendship statement. It was about that's what keeps our friendship, and what keeps my friendship with Greg Anderson is that I don't know anything about him and his distribution of pets. And this invocation of friendship was made at least 25 times in response to questions about do you know why he took your urine samples for testing? Did he give you HGH? Did he give you steroids? Would he have any reason to give you any of these things? Did you even give him payment? And each time he said no, no, no, because we're friends. And yeah, it's a strange notion of friendship, but I'm a celebrity, so I have a unique background that you, the grand jurors, cannot possibly understand. So you can put aside the common sense and experience that you're usually supposed to apply to these proceedings and take my word for it. So friendship really was a code word for I don't know. So it was a false denial of knowledge. It's pretty common. For example, in the Second Circuit cases, Langella, where the defendant in that case said, I don't know what my friend of 30 years does because I have health problems. False denial of knowledge. In the Second Circuit case, United States v. Cohn, similarly, the defendant said, I don't recognize the handwriting that you're showing me. I don't recognize this envelope, even though the evidence showed that it was his handwriting, his wife's handwriting, and an envelope that he had passed on. That's false denial of knowledge.    said, I don't recognize the handwriting that you're showing me. False denial of knowledge. Was this last question, okay, just so I'm clear, the answer is no to that. He never gave you anything like that, right? Was that charged as perjury? This is part of Statement C. It's at the very end after these arguably evasive answers, and the government lawyer says, question, okay, just so I'm clear, the answer is no to that. He never gave you anything like that. Question, answer, right. Was that charged as perjury? I believe so. I believe it was charged in the context of count two. Certainly, I'm sorry, I need to get my record, but it was that course of conduct or that answer. Let's assume it was charged. Correct. Is it one of the counts that the jury could not reach a verdict? That's correct, and, Your Honor, this is a very important point, which is that under the Supreme Court's precedents, Yeager and Powell, the jury's failure to arrive at verdicts on those perjury counts means that there are nullities, and this Court is required to put them aside as though they were not even in the indictment, as though they were not part of the trial, and assess all the evidence at trial only in the light most favorable to upholding the one verdict that the jury did arrive at, which was that the defendant obstructed justice. Let me try to add this one more time. Yes. There's a series in the Statement C. There's a series of questions. Right. And the government contends that Mr. Bond's answers are materially evasive, correct? Materially obstructive. Or that they're evasive and as a result, obstructive. That they're obstructive, that they are false. Can a grand jury witness obstruct justice by giving a series of evasive answers and then giving a direct answer which is not evasive? Yes, Your Honor. Certainly, and this goes to the materiality element. How does the grand jury get misled by that? It doesn't if the answer is truthful. He dodges and dips and doesn't answer the question and talks about stuff that's not responsive to the question. But finally, the prosecutor says, okay, I'm going to ask this one more time. Right. Here it is. What's your answer? And he gives an answer that's not evasive. How can the preceding statements be obstructed? Your Honor, under just the evasive theory, you're absolutely correct. A defendant can essentially cure his evasion if he goes and directly answers the question. But he has to answer it truthfully. And that's the premise. That's the assumption that the defense wants you to make, that what he answered was truthful. The jury rejected that. The district court found specific evidence to support that it was false. So yes. My question proceeds from the assumption that that last answer is in fact false. Okay. And my question is, if a grand jury witness finally fesses up and is no longer evasive on a particular subject, can he or she be obstructive? Yes. That is obstructive, of course, because you're delaying. The whole idea of obstruction and evasion is delaying the providing of the truthful evidence to the grand jury. And if you delay and delay and finally you give them false evidence, you're still not giving them truthful evidence. So, yes, of course that's obstructive. If you were to delay and delay and eventually fess up and give all the truthful evidence, well, then it's arguable that you wouldn't have been what you the original delaying and the hindering would not be material. And materiality is one of the three very important limitations on Section 1503. But in this case, you don't have that. He continued the same course of conduct. And I'm also concerned. I want the court to also view Statement C not simply as evasive and not by the argument that it was simply a delay. It was misleading in and of itself. The general inquiry of the grand jury proceedings, which was told to him a minute in to the grand jury when he entered the grand jury room, was that this inquiry was about what he knew about Greg Anderson and the distribution of illegal substances. He knew. He was immunized. He took an oath to tell the truth and nothing but the truth under advice of counsel. And then this Statement C goes to the heart of that inquiry, which is to say that's what keeps our friendship. And what keeps our friendship? I just don't get into other people's business because of my father's situation. I assume there was a district judge or a magistrate judge on grand jury duty that day? Yes. Okay. If the government thought that the answers before this very last one in Statement C were in fact evasive and therefore obstructive, why didn't they take Mr. Bonds down in front of an Article III judge and force him to answer the question directly? I mean, if they thought up to that point that they were getting nowhere, he was being evasive, he's dodging the question, why not take the grand jury witness who's immunized down to a district judge and say, Judge, make him answer the question? If they weren't satisfied by the last response. Well, Your Honor, they might not have the whole point of the materiality is that they didn't know whether he was telling the truth or not. And part of the thing is he says it. My point is if the prosecutor thought when he, right up to this, after this last question where he finally directly answers the question, if he thought that he was still being misled, why not drag the grand jury witness down to an Article III judge? Doesn't the fact that he accepted this answer tell us that he thought the witness, although being untruthful, was no longer being evasive? Your Honor, again, the theory of the obstruction of justice prosecution was not simply that it's evasive, and that's what the defense wants you to believe, that it's simply this nonresponsive delaying tactic. But it wasn't. It was an affirmative calculated deception to say that he didn't have anything of relevance to give to the grand jury. But in any case, even if they had believed that he was not telling the truth, and were not satisfied with the answer, they couldn't very well bring him to an Article III judge who would say, I don't believe you're telling the truth, tell the truth, give a different answer. I mean, the judge wouldn't have the power to do that. That's not my point, and I may be beating a dead horse here. I'm sorry if I don't. If after, if he didn't take him to an Article III judge to force an answer, after he got a direct answer, doesn't that tell us that the government at that point felt it was no longer being misled? No. It tells you that the government had, after giving six attempts, actually more later on, many attempts, finally said, okay, well, we're not going to be able to get anything different out of you. So you have been consistent in trying to get around giving us the evidence that we believe you know. And the government certainly had reason to believe he knew. He was publicly endorsing Greg Anderson and Balco and Victor Conti. He was working with him as a trainer 24-7. Let me ask you this. The argument that was made this morning, which perhaps was made more forcefully than in the briefs, was that the heart of Statement C, having to do with I was a defendant, knew from the get-go that there was a single grand jury transcript that was at issue. He had noticed that that was what it was about. It was his testimony with respect to Greg Anderson and what he knew about Greg Anderson and PEDS, including injectable PEDS.   And he said that one single day, one single testimony, there were examples you could look to, the perjury counts, and there was no change in theory. It was simply a narrowing in focus. No, but there are ellipses. The argument is made that he couldn't have known about the celebrity child charge because there are ellipses for that paragraph, and therefore it's not in the indictment. Well, Your Honor, the plain language of Count 5 says including but not limited to the language there. And also, the Supreme Court in Shad v. Arizona, which is also reiterated in this court's case, United States v. Hofus, says specifically that it's not required for the grand jury or jury to find unanimously as to the means by which somebody conducts a crime. Here, the specific particular statements were means by which the defendant obstructed justice. So, you know, the grand jury, there's no guarantee that the grand jury, the grand jury was never required to descend into particulars. They had the entire grand jury transcript to consider. And the defendant did as well. Sorry, the jury did as well. In fact, there is no merit to this idea that the jury instructions erred because as a whole, they required the jury to consider all the evidence. They clearly instructed on the elements of materiality and intent. In fact, the defense is closing, and this is that transcript, 2004, asks the jury to look at the entire transcript, as does the government. Thank you. Thank you very much, Your Honor. I'll give you one minute. One minute. And in one minute, I will explain why opposing counsel's answers, and I have great respect for her, are false, evasive, and misleading as to this record. She just told this Court that the three questions, she's misleading because she's combining where you injected. Those were charged, and the government didn't get a conviction on them. The questions about self-injection on pages 42 to 48 were never charged. Here's the indictment. There is no reference to any of those self-injection questions. The government has never charged them as false. It offered no evidence that they were false. In fact, then you get to Statement C, which is the 52 words. They're trying to argue that was false. Judge Hilston said you can't argue that was false. You told me, you told the jury, that it was not false. You said that it was evasive. Let me ask you this. Did the defense at or before trial ask for particulars on this count? What the defense did is it, it, it was. Can we start with a yes or no? No. What the defense did was it objected at every point, on multiple occasions, to the inclusion in Count 5 of any statement that was not expressly contained in this indictment. But a bill of particulars was never asked for with respect to this count? No. And, of course, a bill of particulars, even if it was asked for, couldn't cure the fact that Statement C, or the underlying portion, was omitted from the indictment under United States v. Fleming. It wasn't charged. The self-injection claims were never alleged to be false. They offered no evidence that they were false. And we have a conviction here that literally, as Russell says, would allow the government to, to charge, oh, you committed a crime in some way, and then as, as the case proceeds to change its theory constantly, as it did. One final point. At one point, it said it wanted to add seven additional statements. Another point, it wanted to add 14 additional statements. Then it came down to seven, and Judge Hilston cut that to four. So the, the field was constantly changing during the course of the prosecution.  Thank you very much.  Thank you both for your oral arguments presented here today. The case is now submitted. We're going to take a brief recess, and we'll be, we'll turn momentarily. Thank you. Thank you.
judges: Schroeder, Hawkins, Murguia